## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TOMEKA M. DANIELS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 15-237-LPS |
| | : | |
| (DHSS) DELAWARE PSYCHIATRIC | : | |
| CENTER, | : | |
| | : | |
| Defendant. | : | |

Tomeka M. Daniels, Wilmington, Delaware, Pro Se Plaintiff.

Joseph Clement Handlon, Deputy Attorney General, and Lauren E. Maguire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendant.


## MEMORANDUM OPINION


September 18, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

## I.      INTRODUCTION

Plaintiff Tomeka M. Daniels ("Plaintiff") filed this action pursuant to 42 U.S.C. § 2000e-5,

alleging employment discrimination.   (D.I. 2)   She proceeds *pro se* and was granted leave to proceed

*in forma pauperis*.   The Court has jurisdiction pursuant to 28 U.S.C. § 1331.   Presently before the

Court is Defendant's motion for summary judgment and Plaintiff's opposition.   (D.I. 56, 66, 68, 69)

## II.     BACKGROUND

Plaintiff commenced this employment discrimination action on March 13, 2015.   (D.I. 2)

Following a series of motions to dismiss, the matter proceeds on Plaintiff's Title VII race

discrimination claims against Defendant as set forth in both the charge of discrimination (D.I. 8 at

13) and Plaintiff's original Complaint (D.I. 2).   (*See* D.I. 52, 53)   The Court previously dismissed

retaliation and race discrimination claims raised against Defendant.   (*See* D.I. 44, 45)

Plaintiff's EEOC charge of discrimination, dated January 6, 2014, alleges discrimination

based upon race, noting Plaintiff's protected class as "Race (black)".   (*See* D.I. 8, at Ex.)   It states

that Plaintiff submitted her charge of discrimination to the Delaware Department of Labor on

December 13, 2013.   The Charge of Discrimination was signed on January 6, 2014 and identified

adverse employment actions of harassment, reassignment, and discipline.

The charge asserts that in retaliation for a complaint Plaintiff filed against Nursing Director

Valerie Deveraux ("Deveraux") (who is white), and because Plaintiff suffered a work-related injury,

she was harassed, ridiculed, and treated in a hostile and intimidating manner by Deveraux on several

occasions from October 21, 2013 to December 12, 2013.   Plaintiff was moved off the unit where

she normally worked and told to complete a one-day training and mandatory refresher with nursing

staff.   (D.I. 8 at Ex.; D.I. 67 at 34, Pl.'s Dec. 12, 2013 grievance)   Plaintiff's physician released her

to return to work to full duty on November 18, 2013.   (D.I. 8 at 13)   She was reassigned to the mail

1

room to shred documents in unsafe and unhealthy conditions.  (*Id.*)  On November 21, 2013,

Plaintiff "received a telephone call from 'supervision' to clock out without pay and her supervisor

would follow up later that evening."  (D.I. 67 at 34)  Plaintiff was told to report to medical records

by the ADN (presumably Deveraux) "without reason" and, when Plaintiff asked why she was being

moved, she was told Administration had told the ADN to move her.  (*Id.*)  Plaintiff reported to

medical records each day until November 27, 2013, when the Hospital Director told her to remain

in medical records.  (*Id.*)  Plaintiff received a ten-day suspension on December 18, 2013, effective

January 6, 2014.  (*Id.*)  The suspension was based upon Defendant's determination that Plaintiff

had falsely reported a work-related injury.[1]  (D.I. 67 at 1-43)

Plaintiff filed her Complaint after she received of a notice of suit rights dated December 15,

2014.  (D.I. 2)  Both the Complaint and the charge of discrimination contain similar allegations

regarding actions taken by Deveraux.  The Complaint, but not the charge of discrimination, alleges

that "on 12/12/2014 . . . I was verbally harassed and somewhat assaulted by Valerie Deveraux in

which she invaded my personal space became physical[ly] aggressive and proceed[ed] to snatch my

personal property out of my hands."  (D.I. 2 at 6)

On August 11, 2017, the Court entered a scheduling and discovery order.  (D.I. 54)

It is not clear, but it does not seem that any discovery has taken place.  Defendant moves for

summary judgment on the grounds that there is no genuine dispute as to any material fact and

judgment as a matter of law is appropriate.  (D.I. 56)

---

[1] Plaintiff was terminated and later reinstated following completion of the Union grievance
process procedure.  (*See* D.I. 47 at 9-18, Jan. 15, 2015 Arbitration Decision and Award)

## III.    LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or,

alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials," or by "showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party

has carried its burden, the nonmovant must then "come forward with specific facts showing that

there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not

make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at

586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing

summary judgment "must present more than just bare assertions, conclusory allegations or

suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The

"mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment;" a factual dispute is genuine only where "the

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

### A.   Administrative Remedies

Plaintiff's Complaint refers to a December 12, 2014 incident in which Deveraux allegedly invaded Plaintiff's personal space, became physically aggressive, and "snatched" Plaintiff's personal property out of her hands.   (D.I. 2 at 6)   Defendant argues that summary judgment is proper because Plaintiff failed to exhaust her administrative remedies for the claim.   Plaintiff's opposition does not address this portion of Defendant's motion for summary judgment.   Instead, she focuses upon her termination from employment, an issue that is not before the Court.

In Title VII cases, claims are properly presented to a court only after administrative remedies have been exhausted.   *See Anjelino v. New York Times*, 200 F.3d 73, 87 (3d Cir. 1999).   As a prerequisite to filing a lawsuit in federal court for race discrimination, a plaintiff is required to exhaust administrative remedies with the EEOC or an equivalent state or local agency.   *See Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) ("[T]he causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits.   A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the

4

precondition to suit specified by Title VII: prior submission of the claim to the EEOC for conciliation or resolution.") (internal quotation marks omitted); *see also Joyner v. School Dist. of Phila.*, 313 F. Supp. 2d 495, 500 (E.D. Pa. 2004) ("It is well settled that as a pre-condition to filing suit under Title VII, a plaintiff must first file charges with the EEOC within 180 days of the alleged discriminatory act.") (internal quotation marks omitted).

The charge of discrimination was filed on January 6, 2014.   The original Complaint refers to the incidents in the charge, but also includes the December 12, 2014 incident.   Given the timeline, it is impossible for Plaintiff to have raised the December 12, 2014 incident in the January 6, 2014 charge of discrimination that was filed some eleven months earlier.   Because the claim was not brought to the attention of the EEOC, it did not fall within the scope of its investigation.   *See, e.g., Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d Cir. 1996); *Webb v. City of Philadelphia*, 562 F.3d 256, 262-63 (3d Cir. 2009).   Plaintiff did not exhaust her administrative remedies as to the December 12, 2014 incident.

Plaintiff's failure to exhaust her administrative remedies is fatal to her claim involving the December 12, 2014 incident.   Therefore, the Court will grant Defendant's motion for summary judgment on the issue of failure to exhaust administrative remedies.

**B.     Race Discrimination**

Plaintiff, who is black, alleges that she was harassed, ridiculed, and treated in a hostile and intimating manner by Deveraux on several occasions from October 21, 2013 to December 12, 2013. The Complaint specifically refers to October 21, 2013, when Deveraux allegedly telephone Plaintiff at home due to an injury.   The Complaint alleges that Deveraux was verbally abusive and harassing. The Complaint alleges that after Plaintiff reported the incident, a meeting was held, and she was informed the incident was not considered harassment because it happened only one time.   When

Plaintiff returned to work the next day, she was reassigned to shred documents in a room with deplorable conditions where, she alleges, she remained for 30 days.

Title VII states, "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a).   A plaintiff may prove discrimination by direct evidence, as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly, through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Here there is no direct evidence of discrimination, so the Court turns to the *McDonnell Douglas* burden-shifting framework.   Accordingly, Plaintiff bears the initial burden to demonstrating that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.   *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). To succeed on a status discrimination claim, a plaintiff must show that an improper consideration was "a motivating factor" for the adverse action.   *See e.g.*, *University of Texas Southwestern. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2533 (2013); 42 U.S.C. § 2000e-2(m).   The elements of a prima facie case may vary depending on the facts and context of the particular situation.   *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions.   *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 142.   If a defendant meets this burden, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual.   *See id.* at 142-43.   To do this, a plaintiff must "point to some evidence, direct or

6

circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).   "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal quotation marks and citations omitted).

As to the first element of a prima facie case, as stated in the charge of discrimination, Plaintiff is a black woman.   As to the second element, Plaintiff's verified complaint states that she was a "model employee."   Neither party submitted any further evidence as to this element.   As to the third element, the record indicates reflects that Plaintiff was moved off her unit and reassigned to perform tasks under conditions described as "unsafe and unhealthy."   The Court construes the evidence in the light most favorable to Plaintiff as the non-moving party and determines she has satisfied the first three of the four prima facie elements.   Plaintiff has not, however, met her obligation or pointed to any evidence creating an inference that the decision to remove her from her unit and reassign her to shredding room was discriminatory.   *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003).   Plaintiff complains she received a harassing phone call, but the contents of the call are unknown to the Court.   In addition, when she filed her grievance during the same time-frame she made no mention of any type of race discrimination or harassment based upon her race.   In short, there is nothing in the record to indicate that the actions taken against Plaintiff were based upon her race.

Accordingly, the Court will grant Defendant's motion for summary judgment on the discrimination claims based upon race.

## C.   Hostile Work Environment

While not clear, it may be that Plaintiff alleges a hostile work environment.   To make out a prima facie claim for hostile work environment on the basis of race, a plaintiff "must establish 1) the employee suffered intentional discrimination because of her race, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).   "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).   "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment.   *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Plaintiff has not shown that she suffered intentional discrimination because of her race.   At best, she has shown that Deveraux called her on one occasion, was abusive, and verbally harassed her.   As discussed above, the record does not contain the contents of the telephone call.   Plaintiff complains of one incident without providing evidence of what was said.   This allegation, lacking in evidentiary support, is insufficient to sustain the claim at the summary judgment stage.   *See Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).   Therefore, the Court will grant Defendant's motion for summary judgment.

## V.    CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment.

(D.I. 56)

An appropriate Order will be entered.